**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

| | | |
|---|---|---|
| **EDWARD ASHBY,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | **Case No.** |
| **GES CORPORATION and** | § | **2:25-CV-00045-EG-MHW** |
| **GRIZZLYSTICK CORPORATION,** | § | |
| **Defendants.** | § | |
| | § | |

**REPORT AND RECOMMENDATION**

TO THE HONORABLE ERNEST GONZALEZ, UNITED STATES DISTRICT JUDGE:

The Court referred the above-captioned matter to the undersigned for initial proceedings consistent with 28 U.S.C. § 636(b). Before the undersigned is the Defendants' Motion to Dismiss [ECF No. 8] pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Plaintiff has pled a statement of his claim that shows he is entitled to relief, the undersigned **RECOMMENDS** that the Defendants' Motion [ECF No. 8] is **DENIED.**

## I.    BACKGROUND

The Plaintiff, Dr. Ed Ashby, is a renowned expert in bowhunting known for his research on archery related subjects, and, in particular, designs for broadhead arrow tips ("broadheads"). (Plaintiff's Amended Complaint, ECF No. 10, at ¶ 6.) He alleges that he has a licensing agreement with the Defendants where they can market archery products using his name if those products meet his standards. (*Id*. at ¶ 9, 18.) This dispute arises because he asserts that the Defendants' broadheads, specifically, are not meeting his standards. (*Id*. at ¶ 8.)  None-the-less, they continue to use his name to market their broadheads. (*Id*.) As a result, the Plaintiff is bringing three claims against the Defendants: breach of contract, common law misappropriation

1

of name and likeness, and false endorsement under 15 U.S.C. § 1125(a). (*Id*. at ¶ 17-31.) The Defendants have moved to dismiss the breach of contract claim under Rule 12(b)(6) and does so on two primary grounds: 1) that the Plaintiff does not plausibly allege the elements of a breach of contract claim; and 2) that the claim is time-bared under its statute of limitations. (Defendants' Motion to Dismiss, ECF No. 8, at ¶ 3.1, 3.10.)

The undersigned will address each of these arguments in turn after briefly discussing the procedural posture of the case.

## II.    DISCUSSION

A.    <u>Procedural Posture</u>

The complaint before the undersigned is the Plaintiff's Amended Complaint [ECF No. 10]. However, the Defendant also objected to the Plaintiff's original complaint, and they maintain that those objections are still pertinent. (Defendants' Reply, ECF No. 11, at ¶ 1.2.) Therefore, the undersigned will consider the Defendants' objections to the original complaint to the extent that they apply to the amended one. *See, e.g., Davis v. Baylor Reg'l Med. Ctr. at Grapevine*, No. 3:11-cv-1350, 2013 WL 866173, at *1 (N.D. Tex. Mar. 8, 2013) ("If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading.") (quoting *Wright & Miller's Federal Practice & Procedure* § 1476 (2010)). The undersigned further considers all of the documents filed in connection with the Defendants' original motion to dismiss [ECF Nos. 9, 11]. Additionally, the undersigned notes that the Court analyzes the Plaintiff's breach of contract claim pursuant to Texas state law as that is the law the Plaintiff brings his claim under. *See Retro Metro, LLC v. City of Jackson ex rel. City Council*, 147 F.4th 551, 557 (5th Cir. 2025) (citing

*Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir. 1995)) (holding that federal courts apply state substantive law and federal procedural law when adjudicating state-law claims).

B.      Failure to State a Claim

As stated, the Defendants' first objection to the Plaintiff's complaint is that it does not plausibly allege a breach of contract claim. A breach of contract claim is composed of four elements 1) the existence of a valid contract; 2) performance by the plaintiff; 3) breach by the defendant; and 4) damages sustained by the plaintiff as a result of the breach. *See Smith Int'l, Inc. v. Egle Grp*., LLC, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001)). The Defendants attack the Plaintiff's pleading of the last three elements, contending that the Plaintiff does not sufficiently allege he performed under the contract, they breached the contract, or that he sustained damages as a result of the breach he alleges. (Defendants' Motion to Dismiss, ECF No. 8, at ¶ 3.2, 3.4.)[1] For the Amended Complaint to survive the Defendants' motion, the undersigned must determine that the Plaintiff has plausibly alleged these elements pursuant to Federal Rule of Civil Procedure 8(a)(2) and 12(b)(6).

Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." When a defendant alleges that a complaint has failed to do so via a motion to dismiss under Rule 12(b)(6), the undersigned is required to undergo a two-part test. First, it must identify the factual allegations within the complaint and, second, it must assess whether those factual allegations "state a claim for relief that is *plausible* on its face." *Ashcroft v. Iqbal*, 556

---

[1] The Plaintiff challenged the validity of the contract in his original complaint but does not reassert that contention in the amended one. (*Compare* Plaintiff's Amended Complaint, ECF No. 10, *with* Plaintiff's Original Complaint, ECF No. 1, at ¶ 16-17.) Therefore, the undersigned does not consider it or the arguments that the Defendants raised against that contention. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985) (stating that an amended complaint supersedes the original complaint).

U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007)) (emphasis added). At this stage, it can only consider the allegations presented in a complaint and cannot consider matters outside of the pleadings. *See* Fed. R. Civ. P. 12(d) (stating that considering matters outside of the pleadings converts a motion to dismiss to one of summary judgment).[2]

The undersigned must also accept as true any factual allegations that it identifies, and it must draw all reasonable inferences from those allegations in favor of the Plaintiff. *Hernandez v. W. Texas Treasures Est. Sales, L.L.C.*, 79 F.4th 464, 469 (5th Cir. 2023) (citing *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020)). Factual allegations will create a plausible claim where a court can draw a reasonable inference from those facts that a defendant is liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). Generally, this where the alleged facts suggest a defendant could actually be liable—rather than their liability simply being "conceivable." *See Ashcroft*, 556 U.S. at 680 (citing *Twombly,* 550 U.S. at 570) (noting that a complaint must state factual allegations that take a claim "across the line from conceivable to plausible."). The factual allegations do not have to be detailed to meet this standard, and, ultimately, determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on common sense. *Ashcroft*, 556 U.S. at 678-79. However, these allegations must be more than conclusory allegations, unwarranted legal conclusions, and a formulaic recitation of a cause of action's elements. *Id*. at 678.

---

[2] Notably, at the motion to dismiss stage, a court can also consider documents attached to a complaint and, in some circumstances, documents referenced in the complaint. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). However, no other documents were attached to the Amended Complaint, and the Defendants did not present any.

The Plaintiff's factual allegations are as follows: In March 2015, the Parties agreed to a licensing contract which allowed the Defendants to use the Plaintiff's name in marketing materials provided that they produce products in line with his standards. The Defendants then marketed products in his name, and he inspected those products pursuant to the agreement. Those inspections led to the Plaintiff determining the Defendants' broadheads did not meet his standards, he informed them of such, and the Defendants continued to market broadheads using his name regardless. The marketing of those subpar broadheads tied to his name harmed his marketability as an expert and led to reputational and economic damage.

Considering these allegations in their totality, they allow the undersigned to reasonably infer that the Defendants are liable to the Plaintiff for damages as a result of breaching the licensing agreement. The Plaintiff alleges the details of the inspections he performed and that the Defendants were marketing products using his name—which leads to the reasonable inference that the Plaintiff was fulfilling his obligation to perform inspections and grant the Defendants a license. The Plaintiff further alleges that the Defendants were producing substandard broadheads, that he informed them, and that they continued to market the broadheads using his name regardless—which leads to the reasonable inference the Defendants were in breach of the agreement. Lastly, the Plaintiff alleges that he suffered reputational and economic damage as a result of his name being connected to subpar broadheads—which makes plausible the inference that he was harmed by the Defendants' breach. Thus, the Plaintiff has successfully pled a statement of his claim that shows he is entitled to relief.

Now, the undersigned will address each of these considerations in detail.

i.      *Performance by the Plaintiff*

In regard to the Plaintiff's performance, the Defendants assert that the Plaintiff does not allege any facts that indicate he was in compliance with his obligations under the contract. (Defendants' Motion to Dismiss, ECF No. 8, at ¶ 3.2.) However, this is not the case in the Amended Complaint. There, the Plaintiff alleged his obligations under the contract were to provide the Defendants with a license to use his name and inspect the Defendants' broadheads to ensure their compliance with his quality standards. (Plaintiff's Amended Complaint, ECF No. 10, at ¶ 18.) In regard to the license to use the Plaintiff's name, the Plaintiff alleges that he allowed the Defendants to do so and that the Defendants are marketing broadheads using his name. (*Id*. at ¶ 19-20.) In regard to the inspections, the Plaintiff alleges he performed them and detailed how those inspections failed to meet his standards. (*Id*. at ¶ 11-12, 19.) These allegations are sufficient to survive the Defendants' Motion to Dismiss.

Again, we must take all of the Plaintiff's allegations as true and draw all reasonable inferences in favor of the Plaintiff. The *only* reasonable inference that the undersigned can draw from a manufacturer marketing products using an expert's name is that the expert gave them a license to do so. Further, the *only* reasonable inference that the undersigned can infer from the fact that the Plaintiff has provided specific results from failed inspections is that he is performing those inspections. Therefore, the Plaintiff has done more than simply state he performed his obligations—he has provided the undersigned with facts that allow it to draw the reasonable inference that he did so. Thus, the Plaintiff plausibly alleges that he performed his obligations under the contract.

ii.    *Defendants' Breach*

Under Texas law, a breach of contract occurs when a party fails to perform an act it has agreed to perform. *Worldwide Asset Purchasing, L.L.C. v. Rent–A–Ctr. E., Inc.*, 290 S.W.3d 554, 561 (Tex. App. 2009) (citing *Stewart v. Sanmina Tex., L.P.*, 156 S.W.3d 198, 214 (Tex. App. 2005)). So, the undersigned will find for the Defendants if the Plaintiff's alleged facts do not allow the undersigned to reasonably infer that the Defendants failed to fulfill at least one of their obligations under the licensing agreement.

The Plaintiff alleges that the licensing agreement allowed the Defendants to market their products using his name "provided" they manufactured products that "[met] his quality standards." (Plaintiff's Amended Complaint, ECF No. 10, at ¶ 18.) He further alleges that they breached this agreement by using the license and continuing to market broadheads in his name after he notified them their broadheads were not adhering to his standards.  (*Id.* at ¶ 13-14.) The Defendants challenge the sufficiency of these allegations on two grounds. One, that the Plaintiff does not detail how their broadheads did not meet the contractual standard; two, that the Plaintiff's allegations do not assert he could terminate the license if their broadheads did not. (Defendants' Motion to Dismiss, ECF No. 8, at ¶ 3.4.).

In regard to the contractual standard, the Plaintiff's allegation is that the licensing agreement required the Defendants' products to meet his quality standards. Otherwise stated, the Plaintiff is alleging that the licensing agreement mandated the Defendants' products pass his inspection. This is a factual allegation that the undersigned must take as true. In regard to the Defendants failing to meet his standards, the Plaintiff goes into great detail as to what his standards are and how the Defendants' broadheads did not meet them. Specifically, the Plaintiff alleges that he required smooth, single-bevel broadheads made of durable materials that were

produced at a consistent weight and maintained their sharpness. (Plaintiff's Amended Complaint, ECF No. 10, at ¶ 13.) According to the Plaintiff, the Defendants' broadheads contained bumps, double bevels, a lack of durability, inconsistent weight, and poor sharpness. (*Id*.) These allegations make it entirely plausible that the Defendants were not producing products up to the contractual standard. The standard set forth by the contract was that the Defendants' products pass the Plaintiff's inspection. It can be reasonably inferred that poor quality broadheads containing qualities specifically rejected by the Plaintiff would not meet his requirements. Therefore, the Plaintiff has alleged a contractual standard the parties agreed to and pled facts that allow the undersigned to reasonably infer that the Defendants did not meet that standard.

In regard to the Defendants' second challenge, the Plaintiff alleges that the Defendants are breaching the agreement because they continue to use the license despite the fact that the Plaintiff has instructed them to stop after the Defendants' broadheads failed the Plaintiff's inspection. The Defendants contend that the Plaintiff does not allege that he had the authority to instruct them to stop—even if their products were not meeting his quality standards. Thus, he does not allege they breached the agreement because there is no allegation that the agreement required them to stop using the license at the Plaintiff's command.

Indeed, the Plaintiff does not allege that he, himself, had the contractual right to terminate the license. Instead, he only claims that the agreement required the Defendants' products to meet his standards. This leaves open the possibility that there was a termination process the licensing agreement required the Parties to undergo if the Plaintiff determined that products were not meeting his standards. For example, the agreement could have allowed the Defendants to contest the Plaintiff's conclusions through a neutral third party, and, only after that step, could the license properly be terminated.

However, detailed factual allegations regarding the nature of the contract are not required at this stage. Further, the undersigned is required to draw all reasonable inferences in favor of the Plaintiff. He has alleged that the licensing agreement required the Defendants to meet his quality standards and that they were continuing to use that license after he informed them they were not doing so. It is reasonable to infer that the license terminated after this point because the Defendants had explicitly not met their obligations under it, and, therefore, it is also reasonable to assume they were breaching the agreement by continuing to use that license to market products. While these inferences are favorable to the Plaintiff, they are reasonable, and, as a result, these are the inferences the undersigned must make.

Ultimately, "the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Edelman v. Belco Title & Escrow*, LLC, 754 F.3d 389, 395 (7th Cir. 2014) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). Because the Plaintiff's allegations allow the undersigned to reasonably infer the Defendants are breaching the licensing agreement, the issue should proceed to the merits. There, the Defendants will be free to produce evidence addressing the licensing agreement's termination provisions.[3]

### iii.    *Damage Caused by the Defendants' Breach*

In regard to the Defendants' breach causing damage, a plaintiff must allege facts plausibly showing that a contractual breach caused damages. *Casares v. Agri-Placements Int'l,*

---

[3] Notably, the Defendants contend that there is no unilateral termination right within the contract. (Defendants' Motion to Dismiss, ECF No. 8, at ¶ 3.4.) However, this is asking the undersigned to consider a fact that is not in the complaint—which we cannot do at this stage. *See Estes v. JP Morgan Chase Bank, Nat. Ass'n,* 613 F. App'x 277, 280 (5th Cir. 2015) (holding that a court may not consider factual allegations outside of a complaint when reviewing a motion to dismiss). Further, they only alleged this fact and did not provide any evidence to support it. So, it would be difficult to convert this motion to one of summary judgment on this allegation alone.

*Inc.*, 12 F. Supp. 3d 956, 978 (S.D. Tex. 2014) (citing multiple cases from Texas' state courts). As discussed above, the breach the Plaintiff alleges is that the Defendants produced substandard broadheads and marketed them using his name. *See* Section B(ii). So, the undersigned will find for the Defendants if the Plaintiff failed to allege injuries that could plausibly result from this conduct.

Here, the Plaintiff asserted that his association with the Defendants' broadheads has decreased his credibility with consumers and industry peers which has further caused his marketability for consulting jobs, speaking engagements, and collaborations with others in the industry to be reduced. (Plaintiff's Amended Complaint, ECF No. 10, at ¶ 1.5.)  According to the Plaintiff, this reduced marketability has resulted in both "reputational and economic damages." (*Id*. at ¶ 21.) The precise reputational and economic damages are, admittedly, vague. The Defendants take issue with this ambiguity and state that the undersigned should dismiss the claim because the Plaintiff has failed to allege the specific reputational or economic damage he has suffered. (Defendants' Motion to Dismiss, ECF No. 8, at ¶ 3.9.)

While the Plaintiff does not provide a detailed account his injuries, his allegations of economic damage resulting from reduced marketability implies that he is receiving less paid opportunities because of his connection to the Defendants' inferior products. And, it is more than plausible that the connection of an expert's name to an inferior product would lead to less of a market for his paid expertise. Common sense would dictate that the broadhead industry pays experts who are knowledgeable on superior broadheads so they can absorb the individual's expertise for hunting, broadhead production, and the knowledge itself. Therefore, it would make little sense for members of that industry to seeks the services of or compensate an "expert" whose brand is tied to inferior broadheads because the natural assumption would be that an

10

expert associated with broadheads that are inferior might know less about that product than they contend. Therefore, it is entirely plausible that the Plaintiff is facing economic damages as a result of reduced marketability from his connection with the Defendants' subpar products because individuals would be less willing to pay an expert with such a connection. Thus, the Plaintiff alleges facts which allows the undersigned to reasonably infer that the Defendants' breach caused the Plaintiff to suffer damages.

Further, the undersigned notes that Texas law only requires the *existence* of an injury caused by the breach for liability to attach. *Versata Software, Inc. v. Internet Brands, Inc.*, 902 F. Supp. 2d 841, 859 (E.D. Tex. 2012), *aff'd*, 550 F. App'x 897 (Fed. Cir. 2014). The implication for this requirement at the current stage is that the Plaintiff only needs to allege an injury which could plausibly be caused by the breach—rather than provide the detailed extent of their damages. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (stating that factual assertions do not have to be detailed to survive a motion to dismiss). So, the fact that it is plausible to conclude that an expert's name being associated with inferior products resulted in reduced marketability, economic damages, and reputational damages is sufficient at this juncture—even if the specific details of those damages are unclear. Ultimately, the extent of those damages is important for understanding the remedy that the Court will ultimately impose—which is a consideration for the law of remedies. *See Versata Software, Inc.*, 902 F. Supp. at 859 ("As long as there is injury from the breach, liability attaches under Texas law; the question whether that liability gives rise to the remedy of damages or some other remedy … is a matter for the law of remedies.").

11

C.    Statute of Limitations

At the Rule 12(b)(6) stage, dismissal on the basis of a limitations defense is only proper where it is evident from the complaint that the action is time-barred. *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 351 (5th Cir. 2011) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)). Breach of contract claims in Texas are subject to a four-year statute of limitations. *Smith Intern, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 386 (5th Cir. 2007) (citing *Ingersoll–Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 206, 210–11 (Tex.1999)). The statute of limitations period begins when the claim that underlies it begins to "accrue." Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (West).[4]  Generally, a claim begins to accrue when a wrongful act causes "legal injury," even if that injury is not discovered until later and all resulting damages have not yet occurred. *S.V. v. R.V.*, 933 S.W.2d 1, 4, 6 (Tex. 1996). In other words, the statute of limitations begins to run when the wrongful act, that gives the injured party a basis to bring a legal claim, occurs. This rule is known as the "legal injury rule." *Id*. at 5.[5] In the specific context of a breach of contract claim, the claim begins to accrue—and the limitations period begins to run—the "moment the contract is breached." *Archer v. Tregellas,* 566 S.W.3d 281, 287 (Tex. 2018).

Here, the Plaintiff alleges that the Defendants have been producing substandard broadheads "[s]ince signing the agreement" in March of 2015. (Plaintiff's Amended Complaint, ECF No. 10, at ¶ 11.) However, it is not clear from the Complaint *when* the production of substandard broadheads became a violation of the terms of the contract. The undersigned can assess various points in time that could have triggered the breach—such as when the Defendants were notified and continued to release marketing materials or, alternatively, produce more

---

[4] *See also* W. Mike Baggett & Brian Thompson Morris, *Texas Practice Guide: Real Estate Litigation* § 2:136 (2025) (explaining the language of the statute).

[5] *See Smith Intern, Inc. v. Egle Grp., LLC,* 490 F.3d 380, 387 (citing *Boulle v. Boulle*, 160 S.W.3d 167, 174 (Tex.App.2005)) ("The accrual of a breach of contract claim is governed by the legal injury rule.").

broadheads—but it cannot determine when the statute of limitations began to run without knowing the timing of those actions and what the contract specifies.

Further, it is also possible that the contract between the Parties could be deemed a "continuing contract" which opens up an exception to the four-year statute of limitation in some circumstances. *See, e.g., Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App. 1984) (discussing the exception). Generally, a continuing contract is an agreement that contemplates continuous performance. *Id*. However, the only contractual term discussed in the Complaint is that the Plaintiff agreed to let the Defendants market broadheads using his name if those broadheads met the Plaintiff's quality standards. (*See, e.g.,* Plaintiff's Amended Complaint, ECF No. 10, at ¶ 9, 10, 18.) Other aspects of the contract are not discussed, and the undersigned cannot determine with any certainty that the contract is continuous absent this context. Therefore, it is not evident from the Complaint that this action is time-bared because the undersigned cannot determine when the breach occurred or if the contract can be defined as a "continuous contract." *See, e.g., Spease v. Cooper*, No. 1:12-CV-371, 2013 WL 12415382, at *1 (E.D. Tex. Aug. 22, 2013) (refusing to address a statute of limitations claim at the motion to dismiss stage where it was not apparent from the complaint that the action was time-bared).

## III.   CONCLUSION

In sum, the Plaintiff has alleged the following facts. In March 2015, the Parties agreed to a licensing contract which allowed the Defendants to use the Plaintiff's name in marketing materials provided that they produce products in line with his standards. The Defendants then marketed products using his name, and the Plaintiff inspected those products pursuant to the agreement. Those inspections led to the Plaintiff determining the Defendants' broadheads did not meet his standards, he informed them of such, and the Defendants continued to market

substandard broadheads using his name, regardless. The marketing of those subpar broadheads tied to the Plaintiff's name harmed his marketability as an expert and led to reputational and economic damage.

Considering these allegations in their totality, they allow the undersigned to reasonably infer that the Defendants are liable to the Plaintiff for damages as a result of breaching the licensing agreement. The Plaintiff alleges the details of the inspections he performed and that the Defendants were marketing products using his name—which leads to the reasonable inference that the Plaintiff was fulfilling his obligation to perform inspections and grant the Defendants a license. The Plaintiff further alleges that the Defendants were producing substandard broadheads, that he informed them, and that they continued to market the broadheads using his name regardless—which leads to the reasonable inference the Defendants were in breach of the agreement. Lastly, the Plaintiff alleges that he suffered reputational and economic damage as a result of his name being connected to subpar broadheads—which makes plausible the inference that he was harmed by the Defendants' breach. Thus, the Plaintiff has successfully pled a statement of his claim that shows he is entitled to relief.

Additionally, the only detail the Complaint contains regarding the terms of the licensing agreement is that the Plaintiff agreed to let the Defendants use his name in marketing materials if they met his quality standards. However, it does not provide other context for the undersigned to conclude *when* a breach occurred, and it cannot recommend ruling on a limitations defense at this juncture. Therefore, the undersigned **RECOMMENDS** that the Defendants' Motion to Dismiss [ECF No. 8] is **DENIED.**

The Parties may wish to file objections to the above recommendation. Failure to file written objections to the findings and recommendations contained in this Report and

Recommendation within **fourteen (14)** days from the date of its receipt shall bar an aggrieved party from receiving *de novo* review by the District Court of the findings and recommendations contained herein, *see* 28 U.S.C. § 636(b)(1)(C), and shall bar an aggrieved party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

**SIGNED** this 22nd day of January 2026.

MATTHEW H. WATTERS
UNITED STATES MAGISTRATE JUDGE